617 So.2d 206 (1993)
Hazel Degeyter SKRANTZ, Plaintiff-Appellant,
v.
Emery SKRANTZ, Defendant-Appellee.
Emery SKRANTZ, Plaintiff-Appellee,
v.
Hazel Degeyter SKRANTZ, Defendant-Appellant.
Nos. 92-503, 92-504.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
*207 Lawrence Sandoz, Jr., Opelousas, for Emery Skrantz.
Robert F. DeJean, Opelousas, for Hazel D. Skrantz.
Margret Lahaye Edwards, Opelousas, for Partition.
Before STOKER, THIBODEAUX and SAUNDERS, JJ.
STOKER, Judge.
The plaintiff, Hazel Degeyter Skrantz, appeals the judicial partition of community property owned by her and the defendant, Emery Skrantz. Plaintiff filed a petition for separation, Docket No. C88-0536-D, and defendant subsequently filed a petition for divorce, Docket No. 89-C-0505-A. The trial court granted a motion to consolidate these cases and subsequently granted a divorce.[1] The sole issue in dispute in these *208 consolidated cases involves the partition of community property under the provisions of LSA-R.S. 9:2801. In this opinion we will refer to Hazel Degeyter Skrantz as the plaintiff and Emery Skrantz as the defendant.
In accordance with LSA-R.S. 9:2801, each party filed a sworn descriptive list of community assets. Apparently, the court appointed Ms. Margret L. Edwards, attorney at law, to assist the court in confecting the partition. The trial court rendered judgment partitioning the community assets and granting a servitude of passage on one of the tracts of land involved in the partition. From this judgment, the plaintiff appeals.
Plaintiff presents the following issues for our review:
1. Whether $78,674.14 paid by defendant to his brother, Sherby Skrantz, was actual payment of a valid community property debt owed to Sherby Skrantz, or whether the "payment" was made to deprive plaintiff of her one-half share of the community property;
2. Whether the trial court erred in awarding plaintiff only one-half of the net rather than gross retirement benefits paid to defendant from July 1988 through August 1989, and whether the trial court erred in failing to give plaintiff a credit or set-off for this accrued retirement income defendant owed to plaintiff; and
3. Whether the trial court abused its discretion in the manner in which it allocated and divided the parties' rights to receive repayment from their major children for money the parties loaned the children.
We reverse the trial court's judgment in part; affirm in part; remand in part for further proceedings.

Payment of $78,674.14 to Sherby Skrantz
On January 20, 1988, defendant gave his brother, Sherby Skrantz, $78,674.14. Defendant contends that he borrowed $37,000 from Sherby Skrantz in December of 1981, to purchase land and that the $78,674.14 was repayment of the $37,000 plus interest. Defendant's attorney stated in a letter to Ms. Edwards that defendant had a bank calculate the interest as the amount of interest which Sherby Skrantz would have received on the $37,000 if he had a certificate of deposit in that amount invested at 12%. Apparently, after receiving a request from Ms. Edwards to show how he arrived at the repayment figure of $78,674.14, defendant had the bank recalculate the amount based on what was due under the terms of the note, which resulted in a $64,917.26 figure. Ms. Edwards stated in a memorandum to the court that there was an overpayment of $13,756.88.
Plaintiff essentially contends that the money defendant paid to Sherby Skrantz was not actually owed as of January 20, 1988, because defendant had previously repaid the debt. Therefore, the $78,674.14 payment deprived her of community property. She contends this payment was a loss caused by fraud or bad faith in the management of the community.
The trial court held:
"1. The wife complains that the husband paid off a note (P-6) to his brother by using community certificates of deposit in violation of preliminary injunction that had been issued by the Court. She states that her husband should be held in contempt, pay attorney's fees and penalties and/or legal interest. The temporary restraining order against alienation of community property was issued on March 14, 1988 and the preliminary injunction of the same substance was issued on April 5, 1988. The evidence established that Emery Skrantz paid off the note on January 20, 1998 [sic], or two months before the TRO; consequently, the injunction could not have affected the transaction.
"The Court considers the obligation on the note (P-6) to be a valid community obligation. The interest was erroneously calculated and this resulted in an overpayment *209 of $13,756.88. This amount represents a sum paid in error. Each party will be allotted a one-half interest ($6878.44) each in the overpayment, and they may pursue their individual actions against Sherby Skrantz."
Initially, plaintiff asserts that she did not contend, at any time, that the $78,674.14 payment violated a temporary restraining order. We note that, while plaintiff contended at trial that defendant paid her alimony pendente lite out of her one-half of the community in violation of a restraining order, we have found nothing in the record showing that the plaintiff based her claim to one-half of the $78,674.14 on a violation of a restraining order. In any event, the trial court's conclusions in that regard do not affect our review.
More pertinent to this appeal, we find that the trial court erred in its implicit finding that the $78,674.14 payment was a valid payment of an existing community property debt. We particularly note that the trial court gave no discussion of the facts concerning the alleged payment of $78,674.14. The trial court dismissed the matter in a single sentence in its reasons for judgment:
"The Court considers the obligation on the note (P-6) to be a valid community obligation." This statement of factual finding is bare of any suggestion as to the basis of the trial court's conclusions on the subject and provides us with no guidance concerning his ruling.
As we appreciate the facts, defendant purchased the family estate of twenty acres at a sheriff's sale on December 9, 1981. Defendant borrowed $37,000 from Sherby Skrantz to purchase the estate. Exhibit P-6 shows a check issued to Howard Zerangue, the sheriff, signed by Sherby Skrantz, and dated December 9, 1981. Exhibit P-6 also shows a promissory note made to Sherby Skrantz by defendant for $37,000 plus interest at the rate of 12% per annum. This note is dated December 9, 1981. The promissory note is marked "Paid in full" and is signed "Sherby Skrantz." Under the signature "78674.14" is written and the date "Jan 20, 1988" is noted. Defendant testified at trial that the $78,674.14 defendant gave Sherby Skrantz on January 20, 1988 was repayment of the $37,000 plus interest. Sherby Skrantz testified that prior to January of 1988, defendant did not pay him any amount on this note.
Without more, guided by the manifest errorclearly wrong rule, we would affirm the trial court's implicit finding that the $78,674.14 was a valid payment of an existing debt. However, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable basis for the finding of the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
According to defendant, no credit was ever shown on the reverse side of the promissory note. However, Exhibit P-2 shows a check issued to Sherby Skrantz by defendant for $30,000. The check is dated April 4, 1982, and contains the following notation: "Payment for borrowed money to buy 20 acres." Exhibit P-3 shows a check issued to Sherby Skrantz by defendant for $3000. The check is dated October 28, 1982, and contains the following notation: "To repay (illegible) for money I borrowed when I bought the family estate of 20 acres." Thus, from these two checks, it appears that defendant had paid Sherby Skrantz at least $33,000 of the $37,000 loan by October 28, 1982.
However, defendant explains the checks and notations as follows. Defendant testified that prior to this sheriff's deed for the $37,000, he and Sherby Skrantz had something of a running balance. Apparently, it was a common practice for defendant and *210 his brother to lend money to one another. Defendant and Sherby Skrantz testified that at the time defendant purchased the twenty acres at the sheriff's sale, defendant owed Sherby Skrantz just under $30,000 for unrelated reasons.
Defendant asserts that although the checks contain notations to the effect that they were issued in repayment of the loan for the twenty acres, the $30,000 check was actually issued to repay Sherby Skrantz for the $30,000 defendant owed Sherby prior to the purchase of the twenty acres at the sheriff's sale.
Defendant explained that "[i]t (presumably the notation on the check) was not meant for the twenty acres ... the reason why I did it, I thought perhaps that I could claim when I filed the income tax, that I could claim some of this money, you know, as tax deductible. But when I got to the tax preparer, she informed me that I could not do that, that only if I sold the land, then you can claim." He stated that the notation had reference to some possible tax advantages but not in payment of the note. Defendant gave no explanation for why he made a "20 acre" notation on the $3000 check as well.
Sherby Skrantz testified that he caught the notation on the $30,000 check and that defendant said "`well, I owed you the money anyway.'" Sherby Skrantz claimed defendant made a mistake in this regard: "[defendant] had his mind on the twenty acres ... I started to scratch it out but I didn't write it so I didn't scratch it out ..." He did not remember the $3000 check.
Concerning the $30,000 loan, which defendant alleges he paid with at least one check containing a notation that it was issued in repayment of money borrowed to purchase the twenty acres, the record reveals the following. Defendant testified that the $30,000 figure represented $21,000 that defendant borrowed to purchase an eighty acre tract from Martin Home Centers, Inc. and close to $10,000 defendant owed to Sherby for cattle and a car(s). Sherby testified that he no longer had a record of why defendant owed him the $29,000 plus. He stated that most of the money was for the purchase of cattle and cars. Interestingly, Sherby did not testify that part of the $29,000 plus was owed for repayment of $21,000 loaned to defendant to purchase the eighty acre tract from Martin Home Centers, Inc.
Additionally, defendant testified that he used the $36,272.53 shown on a deposit ticket to purchase the eighty acre tract discussed above. He testified that $21,000 of that $36,272.53 deposit was the money Sherby loaned him, which defendant alleges formed part of the $30,000 amount defendant alleges he owed Sherby at the time he borrowed the $37,000 to purchase the twenty acre tract. However, the deposit ticket, P-1, shows that while $21,286.34 was deposited into defendant's and plaintiff's account, which amount comprised in part the total deposit of $36,272.53, this $21,286.34 was derived from defendant's and plaintiff's certificate of deposit number 4832 and not from Sherby Skrantz. The remainder of the deposit is unidentified. Defendant testified "[m]aybe I made a mistake. I possibly made a mistake but I know I borrowed $21,000 from him."
Concerning the $78,674.14 payment on January 20, 1988, we note that this payment occurred during the interim of the parties' first and second physical separation, which interim spanned one to two months. The trial court asked defendant what prompted him to pay Sherby Skrantz on January 20, 1988, to which he replied: "... My wife and I had separated briefly, then she talked me into going back ... so I went back. Then when Sherby saw that he said, `Well, I want my money. You don't [sic] seem like things are a little shakey' and he wanted his paymenthe wanted to be paid."
We find that the documents so contradict defendant's story and that his story is so internally inconsistent or implausible that a reasonable fact-finder would not have credited defendant's story.
Two checks were issued by defendant to Sherby with notations that they were in repayment of money borrowed to purchase the twenty acre tract. The total amount of both checks, $33,000, is obviously consistent *211 with partial payment of the $37,000 defendant borrowed to purchase the twenty acre tract. We find it difficult to believe that defendant would have mistakenly written on two different checks that they were issued for the twenty acre tract. Defendant's tax explanation might be a plausible explanation for the notations on the checks; however, the $33,000 total of both checks is obviously inconsistent with the $30,000 loan made without interest. Neither defendant nor Sherby gave a direct explanation for the $3000 check. Additionally, defendant's assertions that part of the $30,000 repayment represented by the check with the "20 acre" notation was in repayment of $21,000 defendant borrowed to purchase an eighty acre tract. However, defendant's own testimony and the deposit ticket showed that the $21,000 used to purchase the eighty acre tract was not derived from Sherby but from defendant's and plaintiff's own C.D. Finally, we find the circumstances of the $78,674.14 payment suspicious. The payment was made approximately six years after the loan and was made during the interim of the parties' first and second physical separation.
We find the plaintiff has met her burden of proving loss or damage caused by fraud. LSA-C.C. art. 2354. "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." LSA-C.C. art. 1957. Accordingly, we award plaintiff one-half of the $78,674.14 or $39,337.07, the loss she sustained. We also award plaintiff legal interest on this amount from the date of judicial demand pursuant to LSA-R.S. 13:4203. See Auger v. Auger, 434 So.2d 492 (La. App.2d Cir.1983).

Retirement Benefits
Defendant retired effective July 1, 1988. He received net benefits from the Louisiana Teachers Retirement System from July 1988 through August 1989 totalling $30,800 or $2200 per month for fourteen months. On August 16, 1989, the trial court signed a judgment ordering the Louisiana Teachers Retirement System to issue all future checks one-half to defendant and one-half to plaintiff. The parties do not dispute that they are each currently receiving one-half of the gross benefits. Emery Skrantz's gross monthly retirement is $2612. Apparently, for the fourteen month period, Hazel Skrantz received nothing from the retirement income received by Emery. Hazel claims that she should have judgment against Emery for one-half of the gross amount of Emery's retirement for fourteen months, that is, one-half of $36,568 ($2612 × 14).
In reasons for judgment and in the formal judgment the trial court recognized Hazel Skrantz's claim for the fourteen months but set the amount at one-half of $30,800 (14 months at $2200). The trial court apparently appointed Margret L. Edwards, an attorney at law, to assist the court in working out the partition of community property. The memorandum that Ms. Edwards submitted to the court reflects that the Louisiana Teachers Retirement System paid to Emery Skrantz only $30,800 during the fourteen months. Emery contends that the difference between the net figure of $30,800 and the gross figure of $36,568 represents monthly deductions by the retirement system for such items as medical insurance and federal and state tax withholding which redounded to Hazel's benefit as well as his. In other words, Emery's position is that Hazel is only entitled to one-half of the net amount which he actually received during the fourteen months.
Hazel Skrantz takes the position that the trial court erred in using the net figure of $30,800 and this error was based on a clerical or inadvertent error. Counsel for Hazel Skrantz refers us to certain portions of the transcript as supporting this claim. Counsel misinterprets the statement of the trial judge to which we are referred. Without more we see no reason to disturb the trial court's disposition of the retirement income issue.

Loans to Children
In his sworn descriptive list, defendant listed as community assets the balance on loan to Verdie Skrantz of $21,100, the balance on loan to Tina Credeur of $20,750, and the balance on loan to Dale *212 Skrantz of $18,295.29. Defendant proposed that the loans be allocated as follows: Verdie Skrantz's debt be allocated to him, Dale Skrantz's debt be allocated to plaintiff, and Tina Credeur's debt be split between the parties. Plaintiff proposed that whatever money could be collected should be split between the plaintiff and defendant.
The trial court stated in its reasons for judgment:
"Various loans were made to the parties' children by them. Some of these loans may have prescribed. The husband apparently does not get along too well with one of the children, but the wife does. Accordingly, the Court allocates the loan of Verdie Skrantz to Emery Skrantz ($21,100). Dale Skrantz's loan is allocated to Hazel D. Skrantz ($18,295.29). This results in a difference of $2804.71 being allocated to Emery Skrantz. Accordingly, the loans of Tina Credeur are allocated as follows: Hazel Skrantz: $13,179.71; Emery Skrantz: $7570.29."
Despite the division of the children's debts which the trial judge ultimately made, in the course of the trial he expressed doubt as to the equity of allocating the separate debts on the mere assumption that they were valid debts not subject to defenses, particularly possible defenses of prescription. The debts appear to be personal obligations not evidenced or acknowledged in writing. In a colloquy between the court and counsel at trial, it became clear that the possibility of establishing the legal existence of the three loans was an unknown factor. Counsel for the defendant conceded that the matter was unsettled.
Despite the trial court's doubt as to the viability of obligations consisting of the loans to the children and his reservations concerning the equity of dividing them, the trial court nevertheless went ahead and treated them as valid collectible assets of the community. In spite of the admitted uncertainty concerning the loans, the trial court went ahead and treated them as if there was no uncertainty. In our opinion, the only equitable course is for this partition trial to be reopened for the purpose of determining whether the loans (some or all) are still viable and, if valid, to determine the correct balance on each loan. In further proceedings, discovery as well as trial proceedings will permit the calling of the children as witnesses and the subpoena of witnesses.
On remand, if the judicial inquiry should determine that some or all of the loans cannot be collected, then they can be eliminated from consideration and the controversy concerning the loans can be put at rest. Should the debtor children acknowledge the debts and the balances owing, then some judicial basis will exist for the enforcement of payment of the debt.

DISPOSITION
For the foregoing reasons, the judgment is reversed in part, affirmed in part and remanded in part for further proceedings. Accordingly, we recast the judgment as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff HAZEL DEGEYTER SKRANTZ and against defendant EMERY SKRANTZ in the full sum of $39,337.07 together with interest from date of judicial demand until paid, being one-half of the sum of $78,674.14 of community funds diverted by Emery Skrantz to Sherby Skrantz.
It is further ordered, adjudged and decreed that the portion of the trial court judgment which apportions between Emery Skrantz and Hazel Degeyter Skrantz the debts of Verdie Skrantz, Dale Skrantz and Tina Credeur be and it is hereby set aside, and this case is remanded to the trial court, and the trial court is directed to conduct further proceedings concerning this issue consistent with the expressions contained in this opinion.
It is further ordered, adjudged and decreed that all other aspects of the original trial court judgment not affected by the provisions set forth above are reiterated and incorporated herein and affirmed; and those portions of the original trial court *213 judgment amended, as set forth above are affirmed as amended.
The costs of this appeal are assessed 25% to the plaintiff, Hazel Skrantz, and 75% to the defendant, Emery Skrantz.
REVERSED IN PART; AFFIRMED IN PART; REMANDED IN PART FOR FURTHER PROCEEDINGS.
NOTES
[1] The appellant here is Hazel Degeyter Skrantz. She does not appeal from the judgment insofar as it grants Emery Skrantz a divorce. However, because of the consolidation of Mrs. Skrantz's suit for separation with Mr. Skrantz's suit for divorce, the clerk of the district court made up two separate records. However, this appeal is concerned only with Mrs. Skrantz's appeal concerning the trial court's allocation or division of community property which is contained in the trial court's judgment dated December 18, 1991, which is made a part of both records. When the two records were lodged in this court of appeal, they were assigned separate numbers, Number 92-503 to the separation suit of Helen Degeyter Skrantz and Number 92-504 to the divorce suit of Emery Skrantz. There is no reason for separate opinions.